BOSTON MOUNTAIN COMPANY *v.* HIMMELBERGER-HARRISON LUMBER COMPANY.

4-3282

Opinion delivered January 15, 1934.

*Pace & Davis, Walter L. Pope* and *D. T. Cotton,* for appellant.

*Oliver & Oliver* and *J. Loyd Shouse,* for appellee.

SMITH, J. This suit was brought to foreclose a mortgage given to secure a note, the execution and nonpayment of which is admitted. The question here in issue arose out of the cross-complaint and the answer thereto. It appears that John H. Himmelberger, individually, and as trustee, owned large tracts of land in Newton County, and that the Himmelberger-Harrison Lumber Company, of which he was president, owned other lands. Ben E. McFerrin represented Himmelberger and his corporation in Newton County, and the extent of this agency, whether general or special, is one of the disputed questions of fact in the case. The testimony shows without dispute that McFerrin received a salary of $25 per month, and, in addition, was paid twenty-five cents per acre for land

sales in which he took part. It was McFerrin's duty to pay the taxes, and to report timber depredations. We find it unnecessary to consider or decide what, if any, additional authority McFerrin had.

In August, 1929, McFerrin opened negotiations with Himmelberger for the purchase of certain tracts of land containing 4683.02 acres, and in January, 1930, McFerrin met Himmelberger's son by appointment in Poplar Bluff, Missouri, to consummate their prior negotiations. Out of this conference developed the sale and purchase of the lands which is the subject of this litigation. A contract was entered into by McFerrin, W. R. Foley and N. G. Sawyer, as individuals, to buy the lands for a cash payment of $5,000, two deferred payments of $15,000 each, and a third deferred payment slightly in excess of $15,000. Notes were executed to cover these deferred payments, and two of them were paid, and it is the third and last of these notes which is here involved.

The deed was not made to these gentlemen, as the contract of sale provided, but was made to a corporation which they organized on February 4, 1930, known as the Boston Mountain Company, of which McFerrin became and is president, and notes for the deferred purchase money were executed in the name of the corporation by McFerrin as president.

The cross-complaint alleged that McFerrin was the general agent of the vendor, and in that capacity made representations as to the amount of timber on the lands, which representations induced the contract of sale and were later found to be erroneous, and that there was a very material shortage in the quantity of timber, and credit was asked upon the last note to mature for this shortage. The answer to this cross-complaint raised a number of questions, but we consider only one of them, as we find it decisive of this case.

The testimony on the part of the vendor was to the effect that in this transaction McFerrin occupied the relation, not of an agent of the owner, but that of a prospective purchaser who later became purchaser. We think the testimony establishes this fact, and it is therefore

unimportant to consider the representations which McFerrin made to Sawyer and Foley, his associates.

The decree from which this appeal comes rendered judgment against the Boston Mountain Company for the amount of the note, and against McFerrin individually, and decreed the foreclosure of the mortgage. McFerrin has not appealed from that decree.

It is true the owner made concessions in the price of the lands on account of McFerrin's previous agency, but McFerrin dealt with the owner, not as agent, but at arm's length as a prospective purchaser, and he knew as much or more about the quantity of timber than the owner did. McFerrin testified that he made representations to Foley and Sawyer as to the quantity of timber on the lands, and that his estimates were excessive, but he admitted that the owner of the lands made no representations to him in this respect.

We are confirmed in the view expressed by the minutes of the meeting of the stockholders of the Boston Mountain Company, held February 4, 1930, which recite that "The president (McFerrin) reported that he, together with N. G. Sawyer and W. R. Foley, had negotiated the purchase of 4,683.02 acres of timber land in fee from John H. Himmelberger, trustee, same situated in Newton County, Arkansas," etc. The minutes recite the terms of the payments and the three notes to be executed, and that these were to be secured by a mortgage on the lands, "and further by personal indorsement of Ben E. McFerrin, N. G. Sawyer and W. R. Foley."

It may be said that McFerrin did not profess to have accurate knowledge as to the quantity of timber on the lands; indeed, the lands had not then been surveyed. An inspector was employed and a cruise of the lands was begun, but before it was completed McFerrin was called away to fill another engagement, and the inspection was not completed, although more than half of the lands were inspected. It was later found, after the lands had been purchased and surveyed, that a large quantity of timber had been removed by the owners of adjacent lands who may have been mistaken as to their property lines. At any rate, we have concluded that McFerrin acted for

himself and his associates in the purchase of the lands, and they may not now charge their vendor with the responsibility for his excessive estimate.

We conclude that the chancellor was correct in holding that the cross-complaint was without equity, and that it was properly dismissed for that reason. The decree is therefore affirmed.